UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ALGIE SCOTT,

               Petitioner,

vs.                             Case No. 3:15-cv-1452-J-39MCR

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

               Respondents.

_____

**<u>ORDER</u>**

**I.  INTRODUCTION**

Petitioner Algie Scott filed a Petition for writ of habeas corpus (Petition) (Doc. 1) and a Memorandum of Law (Memorandum) (Doc. 2) on December 8, 2015. He presents two claims for this Court's review. Through these claims, he challenges a 2010 Putnam County conviction for sale of cocaine within 1000 feet of a place of worship. Respondents responded by submitting a Response to Petition (Response) (Doc. 12) and an Appendix (Doc. 13).[1]

_____

[1] The Court hereinafter refers to the Exhibits contained in the Appendix as "Ex." Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the exhibit. Otherwise, the page number on the particular document will be referenced. The Court will reference the page numbers assigned by the electronic docketing system where applicable. Apparently, there is a page omitted from the Petition submitted to the Court (page three of the habeas petition form), but the Court is able to undertake a comprehensive review of ground one because the facts underlying the claim are presented on page 3 of the Petition, and the claim is presented on pages 1-2 of the Memorandum.

Petitioner filed a Reply to State's Response (Doc. 15). <u>See</u> Order (Doc. 10).

## II. CLAIMS OF PETITION

Two claims are presented for this Court's review: (1) insufficiency of the evidence to prove the sale of cocaine occurred within 1000 feet of a church and the church regularly conducted services at the time that the crime took place; and (2) ineffective assistance of counsel for failure to inquire into Petitioner's competency prior to and during the trial.

The Court will address the two grounds raised in the Petition. <u>Clisby v. Jones</u>, 960 F.2d 925, 936 (11th Cir. 1992). Respondents urge this Court to summarily deny the Petition. Response at 12. No evidentiary proceedings are required as Petitioner has failed to establish the need for a federal evidentiary hearing. <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011), <u>cert</u>. <u>denied</u>, 565 U.S. 1120 (2012). It is noteworthy that the state court conducted an evidentiary hearing before addressing the relevant claim of ineffective assistance of counsel.

It is important to recognize that if the record refutes the asserted factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing. <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007). Upon review of the record before the Court, the pertinent facts are fully developed. As such, the Court can "adequately assess [Petitioner's] claim[s]

without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert</u>. <u>denied</u>, 541 U.S. 1034 (2004), and no evidentiary proceedings are required.

### III.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> 28 U.S.C. § 2254; <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S.Ct. 1432 (2017). "AEDPA limits the scope of federal habeas review of state court judgments[.]" <u>Pittman v. Sec'y, Fla. Dep't of Corr.</u>, 871 F.3d 1231, 1243 (11th Cir. 2017). As such, AEDPA ensures that federal habeas relief is limited to extreme malfunctions, and not used as a means to attempt to correct state court errors. <u>Ledford</u>, 818 F.3d at 642 (quoting <u>Greene v. Fisher</u>, 132 S.Ct. 38, 43 (2011)).

The parameters of review are as follows:

> Thus, under AEDPA, a person in custody pursuant to the judgment of a state court shall not be granted habeas relief on a claim "that was adjudicated on the merits in State court proceedings" unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or ... was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "For § 2254(d), clearly established federal law includes only the holdings of the Supreme Court—not Supreme Court dicta, nor the opinions of this Court." <u>Taylor v. Sec'y, Fla.</u>

Dep't of Corr., 760 F.3d 1284, 1293-94 (11th Cir. 2014).

As for the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Terry Williams v. Taylor, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Under the "unreasonable application" clause, a federal habeas court may "grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts." Id. at 413, 120 S.Ct. 1495. "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" Wiggins v. Smith, 539 U.S. 510, 520, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (quoting Lockyer v. Andrade, 538 U.S. 63, 76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). And "an 'unreasonable application of' [Supreme Court] holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." Woods v. Donald, --- U.S. ----, 135 S.Ct. 1372, 1376, 191 L.Ed.2d 464 (2015) (per curiam) (quotation omitted). To overcome this substantial hurdle, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). This is "meant to be" a difficult standard to meet. Id. at 102, 131 S.Ct. 770.

Pittman, 871 F.3d at 1243-44.

There is a presumption of correctness of state court's factual findings, unless the presumption is rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The standard of proof is demanding, requiring that a claim be highly probable. Bishop v. Warden, GDCP, 726 F.3d 1243, 1258 (11th Cir. 2013), cert. denied, 135 S.Ct. 67 (2014). Also, the trial court's determination will not be superseded if reasonable minds might disagree about the factual finding. Brumfield v. Cain, 135 S.Ct. 2269, 2277 (2015). Also of note, "[t]his presumption of correctness applies equally to factual determinations made by the state trial and appellate courts." Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1284 (11th Cir. 2012) (quoting Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003)), cert. denied, 568 U.S. 1233 (2013).

In applying AEDPA deference, the first step is to identify the last state court decision that evaluated the claim on its merits. Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016).[2] Once identified, the Court reviews the state court's decision, "not necessarily its rationale." Pittman, 871 F.3d at

_____

[2] As suggested by the Eleventh Circuit in Butts v. GDCP Warden, 850 F.3d 1201, 1204 (11th Cir. 2017), cert. denied, 2018 WL 491544 (U.S. Jan. 22, 2018), in order to avoid any complications if the United States Supreme Court decides to overturn Eleventh Circuit precedent as pronounced in Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227 (11th Cir. 2016) (en banc), cert. granted, 137 S.Ct. 1203 (2017), this Court, will employ "the more state-trial-court focused approach in applying § 2254(d)[,]" where applicable.

1244 (quoting <u>Parker v. Sec'y for Dep't of Corr.</u>, 331 F.3d 764, 785 (11th Cir. 2003) (citation omitted)).

Regardless of whether the last state court provided a reasoned opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." <u>Harrington v. Richter</u>, 562 U.S. 86, 99 (2011). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." <u>Richter</u>, 562 U.S. at 99-100 (citing <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991)).

Where the last adjudication on the merits is unaccompanied by an explanation, the petitioner must demonstrate there was no reasonable basis for the state court to deny relief. <u>Id</u>. at 98. "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court." <u>Richter</u>, 562 U.S. at 102; <u>Marshall</u>, 828 F.3d at 1285.

Although the § 2254(d) standard is difficult to meet, it was meant to be difficult. <u>Rimmer v. Sec'y, Fla. Dep't of Corr.</u>, 876 F.3d 1039, 1053 (11th Cir. 2017) (opining that to reach the level of an unreasonable application of federal law, the ruling must be objectively unreasonable, not merely wrong or even clear error). Indeed, in order to obtain habeas relief, "a state prisoner must

show that the state court's ruling on the claim being presented . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Richter</u>, 562 U.S. at 103.

## IV. PROCEDURAL HISTORY

To provide context for review of the two grounds presented in the Petition, the Court provides a brief procedural history. Petitioner was charged by information with sale of cocaine within 1000 feet of place of worship or convenience business. Ex. A at 10. The state filed a notice of intent to seek habitual felony offender status. <u>Id</u>. at 53. On May 22, 2008, the trial court conducted a jury trial. Ex. B, Trial Transcript. The jury returned a verdict of guilty. <u>Id</u>. at 194. The court adjudicated Petitioner guilty. <u>Id</u>. at 197. On March 2, 2010, the court sentenced him to a term of ten years in prison, followed by five years drug offender probation. Ex. B, Sentencing Transcript, at 20. The court entered judgment and sentence. Ex. A at 138-43.

Petitioner appealed his conviction. <u>Id</u>. at 149. Through a public defender, Petitioner filed an <u>Anders</u> brief raising one argument: the trial court erred in denying appellant's motion for judgment of acquittal because the state failed to show the sale occurred within 1000 feet of a church.[3] Ex. C. The Fifth District

---

[3] <u>Anders v. California</u>, 386 U.S. 738 (1967).

Court of Appeal (5th DCA) directed the state to file an answer brief addressing the issue of whether the state's evidence was legally sufficient to establish the distance element of the charged offense, the issue raised in the motion for judgment of acquittal at trial. Ex. D. The 5th DCA allowed the filing of a reply brief as well. Id. The state submitted an answer brief. Ex. E. Petitioner did not file a reply brief. On June 14, 2011, the 5th DCA affirmed per curiam. Ex. F. The mandate issued July 6, 2011. Id.

On July 11, 2011, Petitioner filed a Rule 3.800(c) motion with the trial court. Ex. G at 1-3. The court denied the motion. Id. at 4-5.

On September 1, 2011, Petitioner filed a Motion for Post-Conviction Relief pursuant to Rule 3.850, Fla. R. Crim. Proc. Id. at 6-20. The trial court summarily denied a sentencing issue and directed a response from the state on grounds 2, 3, and 4. Id. at 21-22. Petitioner sought leave to amend the motion. Id. at 23-24. The court granted leave to amend. Id. at 53. Petitioner proceeded on his Amended Motion for Post-Conviction Relief (amended Rule 3.850 motion). Id. at 25-49. The state filed a response to grounds 2, 3, and 4 of the amended motion, and requested an evidentiary hearing on these grounds. Id. at 54. The trial court denied grounds 4 and 5 of the amended motion and set grounds 2, 3, and 6 for an evidentiary hearing. Id. at 55-57.

Petitioner sought and received the appointment of counsel for the post conviction proceedings. Id. at 62-72. The trial court conducted an evidentiary hearing on June 13, 2012. Ex. G-1. Thereafter, the court denied the amended Rule 3.850 motion. Ex. G at 77-82.

Petitioner filed a Notice of Belated Appeal. Id. at 86. The 5th DCA, on October 26, 2012, ordered the notice be treated as a petition for belated appeal, and directed Petitioner to file an amended petition under oath. Id. at 103. On March 22, 2013, the 5th DCA granted the petition for belated appeal. Ex. H. Briefing followed. Ex. I; Ex. J; Ex. K.

The 5th DCA affirmed the trial court's denial of relief on all grounds except issue one, reversing for either an evidentiary hearing on that ground or the attachment of records conclusively refuting that claim. Ex. L. The mandate issued on December 30, 2013. Id. Meanwhile, on December 10, 2013, the trial court entered an amended order denying ground one. Ex. M. The 5th DCA, on April 4, 2014, finding the trial court lacked jurisdiction to act prior to issuance of the mandate, reversed and remanded on that ground again. Id. The mandate issued April 28, 2014. Id.

On appeal of the denial of ground one of the amended rule 3.850 motion, counsel filed an Anders brief. Ex. Q. On October 13, 2015, the 5th DCA affirmed per curiam. Ex. R. The mandate issued on November 6, 2015. Id.

## V. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Ground One

In the first ground of the Petition, Petitioner raises a claim of insufficiency of the evidence to prove the sale of cocaine occurred within 1000 feet of a church and the church regularly conducted services at the time that the crime took place.

Respondents concede that Petitioner exhausted his claim that there was insufficient evidence to prove the sale of cocaine occurred within 1000 feet of a church. Response at 5. They contend, however, that Petitioner did not exhaust that portion of ground one claiming insufficient evidence to prove the church regularly conducted services at the time that the crime took place. Id.

The record shows the following. After the parties rested, defense counsel made a motion for judgment of acquittal arguing that the state had failed to prove that the transaction occurred within 1000 feet of the church. Ex. B at 111-12. In denying the motion, the trial court concluded that there was enough information before the jury as to whether "this was within a thousand feet of the front door of the church." Id. at 116. Defense counsel made another motion for judgment of acquittal after the close of additional evidence, and the court denied the motion. Id. at 151.

Petitioner appealed his conviction. Under the Statement of Judicial Acts to be Reviewed, it included the ground concerning the denial of the motion for judgment of acquittal based on the lack of

evidence to establish the distance element of the offense. Ex. A
at 153. Petitioner raised the issue on direct appeal. Ex. C. In
the Statement of the Case and Facts, it was noted that a motion for
judgment of acquittal had been raised arguing the state failed to
show the drug sale occurred within 1000 feet of the church. Id. at
3. Also of import, after discussing the approximate speed of the
car and the distance traveled, the trial court concluded that the
jury could reasonably make the assumption that the car was still
within 1000 feet of the church when the transaction occurred. Id.
The 5th DCA affirmed. Ex. F.

To the extent that Respondents assert that a portion of ground
one is unexhausted and procedurally defaulted, the Court is
convinced that is the case and that a portion of ground one is
procedurally barred. The record shows that Petitioner did not
raise the claim that there was a failure to prove that religious
services were being regularly conducted at the time that the crime
took place. He did not fairly present the claim to the state
courts.

It is a well-accepted axiom that a petition for writ of habeas
corpus should not be entertained unless the petitioner has first
exhausted his state court remedies. Castille v. Peoples, 489 U.S.
346, 349 (1989); Rose v. Lundy, 455 U.S. 509 (1982). A procedural
default arises "when 'the petitioner fails to raise the [federal]
claim in state court and it is clear from state law that any future
attempts at exhaustion would be futile.'" Owen v. Sec'y, Dep't of

<u>Corr.</u>, 568 F.3d 894, 908 n.9 (11th Cir. 2009) (quoting <u>Zeigler v.</u>
<u>Crosby</u>, 345 F.3d 1300, 1304 (11th Cir. 2003)), <u>cert</u>. <u>denied</u>, 558
U.S. 1151 (2010). Here, it is clear that any future attempts at
exhaustion would be futile.

There are, however, allowable exceptions to the procedural
default doctrine; "[a] prisoner may obtain federal review of a
defaulted claim by showing cause for the default and prejudice from
a violation of federal law." <u>Martinez v. Ryan</u>, 566 U.S. 1, 10
(2012) (citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991)). If
cause is established, a petitioner is required to demonstrate
prejudice. In order to demonstrate prejudice, a petitioner must
show "that there is at least a reasonable probability that the
result of the proceeding would have been different had the
constitutional violation not occurred." <u>Owen</u>, 568 F.3d at 908.

More particularly, to demonstrate cause, a petitioner must
show that some objective factor external to the defense impeded his
effort to properly raise the claim in state court. <u>Wright v.</u>
<u>Hopper</u>, 169 F.3d 695, 703 (11th Cir.), <u>cert</u>. <u>denied</u>, 528 U.S. 934
(1999). Petitioner has failed to point to some factor external to
the defense.

With regard to this portion of ground one, Petitioner has
failed to show cause for his default. In addition, he does not
meet the prejudice or manifest injustice exceptions. Although a
petitioner may obtain review of the merits of a procedurally barred
claim if he satisfies the actual innocence "gateway" established in

Schlup v. Delo, 513 U.S. 298 (1995), Petitioner has failed in this regard. The gateway is meant to prevent a constitutional error at trial from causing a miscarriage of justice and "'the conviction of one who is actually innocent of the crime.'" Kuenzel v. Comm'r, Ala. Dep't of Corr., 690 F.3d 1311, 1314 (11th Cir. 2012) (per curiam) (quoting Schlup, 513 U.S. at 324), cert. denied, 569 U.S. 1004 (2013). The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence." Johnson v. Ala., 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), cert. denied, 535 U.S. 926 (2002). With respect to this unexhausted part of ground one, Petitioner has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

In conclusion, the Court finds the portion of ground one claiming insufficiency of the evidence to prove the church regularly conducted services at the time that the crime took place is unexhausted and procedurally defaulted. As Petitioner has failed to establish cause and prejudice or any factors warranting the application of the fundamental miscarriage of justice exception to overcome the default, this portion of ground one is due to be denied as procedurally barred.

In the alternative, the Court finds that Petitioner has not presented a claim of constitutional dimension in ground one. Ordinarily, the denial of a motion for judgment of acquittal is a

state law claim. It only arises to the level of a claim of constitutional dimension if it is asserted that the evidence was insufficient to support the conviction, and as a result of the deficiency, there was a deprivation of due process of law.

Upon review of the direct appeal brief, no due process claim was raised. The only claim raised was one of trial court error. This Court must refrain from addressing this state law claim; it is not the province of a this Court to reexamine state-court determinations on issues of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'" Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) (quoting Willeford v. Estelle, 538 F.2d 1194, 1198 (5th Cir. 1976)). The federal habeas corpus court will be bound by the Florida court's interpretation of its own laws unless that interpretation breaches a federal constitutional mandate. McCoy v. Newsome, 953 F.2d 1252, 1264 (11th Cir. 1992) (per curiam), cert. denied, 504 U.S. 944 (1992). As there has been no breach of a federal constitutional mandate, this Court is bound by the Florida court's decision.

Finally, Petitioner is not entitled to habeas relief with regard to his exhausted claim of insufficiency of the evidence to prove the sale of cocaine occurred within 1000 feet of a church. An explanation follows.

The Due Process Clause of the Fourteenth Amendment requires the state to prove beyond a reasonable doubt each element of the offense charged. <u>Thompson v. Nagle</u>, 118 F.3d 1442, 1448 (11th Cir. 1997)(citing <u>Jackson v. Virginia</u>, 443 U.S. 307, 314 (1979)), <u>cert</u>. <u>denied</u>, 522 U.S. 1125 (1998). "[T]his court must presume that conflicting inferences to be drawn from the evidence were resolved by the jury in favor of the State." <u>Thompson</u>, 118 F.3d at 1448 (citing <u>Machin v. Wainwright</u>, 758 F.2d 1431, 1435 (11th Cir. 1985)). The relevant question is whether any rational jury, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the charged offense beyond a reasonable doubt. <u>Thompson</u>, 118 F.3d at 1448.

The trial court charged the jury that it must find that the sale or delivery occurred within one thousand feet of a physical place for worship. Ex. B at 152. Detective Brad Forsythe testified the transaction occurred at the intersection of 7th and Madison Street. Ex. B at 33. He said he was located at 6th and Main during the operation. <u>Id</u>. He further attested that the church was located at the 700 block of Main Street. <u>Id</u>. at 39. He recorded the distance from the intersection to the church to be 240 feet. <u>Id</u>. at 40. He further testified that two city blocks is within a thousand feet. <u>Id</u>. at 51.

Jason Neat, the undercover narcotics detective, testified that although he stopped the car at 7th and Madison, <u>id</u>. at 67, he pulled off in the undercover vehicle. <u>Id</u>. at 73. He was unsure

where he was located at the time Petitioner approached the vehicle.

Id. Detective Neat testified he drove away from the church for

nineteen seconds, going "[b]etween 20 and 30" miles per hour. Id.

at 75, 84-85.

Defense counsel moved for a judgment of acquittal. Id. at

111. He argued that the undercover officer could not say with any

precision where he was at the time the sale took place. Id.

Counsel argued:

> And the Court can see a video to where he
> starts out 240 feet from where the body of the
> church is. And that's what the law states, is
> that it has to be within a thousand feet of a
> physical place of worship, which means the
> body of the church, as opposed to real
> property comprising of a public housing
> facility or a school to where it really does
> in the statute talk about the real property.
> So you don't measure from the property line.
> You measure from the body itself. It's 240
> feet.
>
> The officer is heading north, away from
> the church, for an unspecified distance, but
> by his own account nineteen seconds. And,
> Judge, when I get into closing, I will show
> that to the jury. But, I believe it's longer,
> but the officer said nineteen seconds. And
> that's just too little for any reasonable jury
> to conclude that this took place within a
> thousand feet. So we ask the Court to direct
> JOA as to that.

Id. at 111-12.

The state countered this argument:

> Regarding the within a thousand feet, we
> had Officer Forsythe testify that he measured
> from 700 Main Street to 700 Madison Street.
> That was 240 feet. I have a map that shows
> there are three streets, Olive Street, Bronson

> Street and Durham Street before 7th dead ends.
> So based on his math, the jury can conclude
> that there's -- if you head north until 7th
> dead-ends, it's not more than a thousand feet
> from the church. So we believe based on that,
> that it should go to the jury whether the sale
> was within a thousand feet.
>
> You see him driving him straight on 7th.
> He doesn't turn right or left. And 7th dead-
> ends less than a thousand feet from where this
> church is, or it's arguable. In the light
> most favorable to the non moving party, which
> is the State, we would respectfully request
> that the motion for JOA be denied as to that
> as well.

Id. at 112-13.

Defense counsel responded that the maps were just demonstrative aides, not evidence. Id. at 113. He also argued the detective's testimony was purely speculative. Id. The court, after hearing argument, denied the motion. In doing so, it found that the map was not admitted as evidence, so it was not considered in making any decision. Id. at 114. The court noted that according to the testimony, the vehicle drove north at an average of about 25 miles per hour. Id. at 115-16. The court calculated that traveling at 25 miles per hour for nineteen seconds, the car would travel almost 697 feet. Id. at 116. Since the car was already 240 feet from the church, the court calculated that the car was still within 1000 feet when the transaction occurred, or at least that was an assumption that the jury could make as it was well within the testimony. Id. As a result, the court concluded

it was a question of fact for the jury and denied the motion for judgment of acquittal.  Id.

The jury found Petitioner guilty of the charged offense. "When the record reflects facts that support conflicting inferences, there is a presumption that the jury resolved those conflicts in favor of the prosecution and against the defendant. In other words, federal courts must defer to the judgment of the jury in assigning credibility to the witnesses and in weighing the evidence." Johnson v. Ala., 256 F.3d at 1172 (citations omitted). As explained by the Supreme Court,

> Jackson requires a reviewing court to review the evidence "in the light most favorable to the prosecution." 443 U.S., at 319, 99 S.Ct. 2781. Expressed more fully, this means a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id., at 326, 99 S.Ct. 2781; see also Schlup v. Delo, 513 U.S. 298, 330, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) ("The Jackson standard ... looks to whether there is sufficient evidence which, if credited, could support the conviction").

McDaniel v. Brown, 558 U.S. 120, 133 (2010) (per curiam).

In this case, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that Petitioner committed the offense of the sale of cocaine within 1000 feet of a place of worship as charged in the information.  This Court must defer to that resolution as well as

give deference to the state court's decision on direct appeal. In sum, to the extent the claim was raised in the federal constitutional sense, and to the extent that the federal constitutional claim was addressed, the state court's rejection of this ground is entitled to deference as required pursuant to AEDPA. See Brown, 558 U.S. at 133 (recognizing that the reviewing court must employ the "deferential review that Jackson and § 2254(d)(1) demand").

The adjudication of the state appellate court resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. Therefore, Petitioner is not entitled to relief on this ground because the 5th DCA's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

## B. Ground Two

In his second ground for habeas relief, Petitioner raises a claim of ineffective assistance of trial counsel for failure to inquire into Petitioner's competency prior to and during the trial. Petition at 3. To prevail on a Sixth Amendment claim of ineffective assistance of trial counsel, Petitioner must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 688 (1984), requiring that he show both deficient

performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different). To constitute a Sixth Amendment violation, both parts of the test must be satisfied. <u>Bester v. Warden, Att'y Gen. of the State of Ala.</u>, 836 F.3d 1331, 1337 (11th Cir. 2016) (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)), <u>cert</u>. <u>denied</u>, 137 S.Ct. 819 (2017). However, a court need only address one prong, and if it is found unsatisfied, the court need not address the other. <u>Id</u>.

Recently, the Eleventh Circuit, in <u>Reaves v. Sec'y, Fla. Dep't of Corr.</u>, 872 F.3d 1137, 1148 (11th Cir. 2017) (quoting <u>Strickland</u>, 466 U.S. at 687), instructed: a counsel's performance is deficient only if counsel's errors are "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." The level of prejudice required to meet the prejudice standard is "a probability sufficient to undermine confidence in the outcome. <u>Id</u>. (quoting <u>Strickland</u>, 466 U.S. at 694).

Petitioner raised his claim of ineffective assistance of counsel in ground two of the amended Rule 3.850 motion. The record reflects that the trial court conducted an evidentiary hearing. Petitioner testified that his attorney, William Bookhammer, met with him one time prior to trial and did not discuss any defenses to the charge. Ex. G-1 at 7. Petitioner also testified that Mr. Bookhammer had represented him for a period of about ten years.

Id. Petitioner said that he had been diagnosed as "schizophrenic polar" Id. at 8. He claimed he suffered from mental illness for ten to twenty years. Id. Petitioner said Mr. Bookhammer knew about Petitioner's mental condition. Id. Petitioner was taking medication for his mental illness. Id. at 9. Petitioner said his counsel did not discuss with him filing for a mental evaluation. Id.

Petitioner confirmed that he went to trial on May 22, 2008, and was found incompetent to proceed to sentencing on June 17, 2008. Id. at 9-10. He attested that he was sent to a state mental hospital. Id. at 10. Petitioner complained that he was returned for sentencing without a competency hearing. Id. at 10-11.

At the evidentiary hearing, Petitioner called William Bookhammer, his trial attorney. Id. at 12. Mr. Bookhammer testified that he had been a member of the Florida Bar since 1987. Id. at 12-13. He noted that he had represented Petitioner back in the mid 90's. Id. at 13. Mr. Bookhammer said he was familiar with Petitioner's mental problems, including the fact that he had schizophrenia. Id. Mr. Bookhammer was unaware of any diagnosis that Petitioner was bipolar. Id. Mr. Bookhammer met with Petitioner at least two times prior to trial. Id. They watched the videotape of the transaction, and Petitioner told his counsel that it was not him on the videotape. Id. They discussed the elements of the offense. Id. at 13-14. Thereafter, Petitioner requested to see the videotape again, and they viewed it a week or

ten days before trial.  <u>Id</u>. at 14.  The Petitioner inquired as to how the state was going to prove the exchange took place within a 1000 feet of a church as it was difficult to tell where the transaction took place from the videotape.  <u>Id</u>.

Mr. Bookhammer testified that after the trial, he received correspondence from Petitioner complaining that he was hearing voices and seeing things.  <u>Id</u>. at 15.  This prompted counsel to file a suggestion of incompetency with the trial court.  <u>Id</u>. at 15-16.  Dr. Young determined Petitioner was incompetent to proceed to sentencing.  <u>Id</u>. at 16.  Dr. Young opined that perhaps the stress of the process and the incarceration Petitioner faced caused him to experience a rapid decomposition.  <u>Id</u>. at 17.  Counsel noted that Dr. Young was familiar with Petitioner as he had declared Petitioner competent to proceed to trial in 2007 on a different case.  <u>Id</u>. at 18.

With regard to Petitioner's mental state leading up to and during the trial, Mr. Bookhammer testified that he had nothing to support a claim that Petitioner was incompetent going to trial. <u>Id</u>.  "In my observations of my client during the trial and then times before then, was that I did not have any doubts of his competency or no reason to question his competency at that time." <u>Id</u>.  Counsel continued, "as long as he maintained his medication regimen, he was stable."  <u>Id</u>. at 19.  Mr. Bookhammer said Petitioner had been drug free, compliant with his medications, and undergoing counseling.  <u>Id</u>.

With regard to his preparation for trial, Mr. Bookhammer explained why he did not seek a mental examination before trial. He said he believed Petitioner to be competent because Petitioner knew what the charges were, he understood the defenses, he participated in "good, rational conversations[,]" he was compliant with his medications, and he had been declared competent less than a year before. Id. at 20. Finding Petitioner engaged, rational, and able to discuss his case, Mr. Bookhammer testified that he did not seek a competency evaluation. Id.

On cross examination, Mr. Bookhammer testified that he saw no signs of incompetency, noting Petitioner was drug free and compliant with his medications. Id. at 24. Mr. Bookhammer said that during his career he had faced competency issues hundreds, if not thousands of times. Id. at 26. Counsel also noted that prior to trial, Petitioner was in jail; therefore, he was not ingesting illegal substances and was receiving all medication as prescribed. Id. at 24. With regard to Petitioner's behavior during the trial, counsel testified that he saw no signs of incompetency during the trial. Id. at 25. Mr. Bookhammer said that Petitioner was very aware of the content of the videotape, and recognized that the state was going to have a difficult time explaining where the exchange took place. Id. Mr. Bookhammer also testified that Petitioner had a very good, factual understanding of the charges and possible defenses. Id.

The record of the trial demonstrates the following. Petitioner responded promptly and appropriately to the court's questions immediately before the trial. Ex. B at 7-9. After the state's evidence had been presented, the court inquired as to whether Petitioner wished to take the stand. Id. at 105-106. Again, Petitioner was engaged in the proceedings and responded appropriately to the court's inquiry. Id. at 106-109.

At the end of the trial, prior to the return of the jury's verdict, the following occurred:

> THE COURT: Again, my compliments to both lawyers. A well presented case. We have some technology glitches from time to time, but that's to be expected these days, I guess. But, anyway, thank you for your -- not only your presentation, you represented your clients well. And the Court appreciates your professionalism as well.
>
> Mr. Scott, were you satisfied here with your lawyer?
>
> THE WITNESS: Yes, sir.

Id. at 192.

There is nothing in the record suggesting that Petitioner at any point during the trial demonstrated instability, incompetency, or an inability to understand the proceedings or confer with his counsel or interact with the court in a meaningful way. On the contrary, the record shows that Petitioner was lucid and appropriately engaged in his defense.

Notably, the trial court, in denying the Rule 3.850 motion, referenced the applicable two-pronged Strickland standard as a

preface to addressing Petitioner's claims of ineffective assistance
of counsel.  Ex. G at 79.  The court addressed Petitioner's claim:

> In Ground Two, the Defendant claims that
> Trial Counsel was ineffective in failing to
> file a suggestion of incompetency during the
> pre-trial and trial stages of the instant case
> resulting in an alleged denial of due process
> rights, denial of a fair and impartial trial
> and the denial of his Fifth, Sixth, and
> Fourteenth Amendment constitutional rights.
> First and foremost, Trial Counsel testified
> unequivocally that at no time prior to or
> during the trial did the Defendant manifest
> any symptoms giving rise to concerns over the
> issue of competency.  To the contrary, Trial
> Counsel indicated that the Defendant actively
> and productively participated in the
> preparation of the case and the subsequent
> defense at trial.

Ex. G at 79-80.

The court continued its explanation for denying this ground:

> The most common event triggering a
> request for a mental health evaluation is the
> observation of Trial Counsel.  It is important
> to restate that this particular Trial Counsel
> had repeatedly represented the Defendant over
> a fifteen (15) year period and was fully aware
> of the specific details of the Defendant's
> mental health issues.  Had the alleged
> symptoms of incompetency been as readily
> apparent as the Defendant claims, the
> prosecutor or the Court and certainly this
> Trial Counsel, would have taken note.
> Defendant now argues that Trial Counsel should
> have requested an evaluation during the trial
> regardless of whether Trial Counsel observed
> any conduct giving rise to concerns over
> competency.  Meeting the Defendant's
> expectations would require a mental health
> expert to stand by on a full time basis in
> order to evaluate him at a moment's notice,
> even absent any articulable [sic] concerns
> expressed by Trial Counsel.  This argument is
> without merit.

Id. at 80.

Clearly, the trial court considered defense counsel's actions within the broad range of reasonably competent counsel under prevailing professional norms. The record demonstrates that as soon as counsel suspected his client was experiencing a decomposition, based on his client's post trial correspondence stating he was hearing and seeing things, defense counsel notified the court and sought a competency review. Although Petitioner claims his counsel performed deficiently, the record demonstrates otherwise.

Significantly, Petitioner had the benefit of experienced counsel: "[w]hen courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." Cummings v. Sec'y for Dep't of Corr., 588 F.3d 1331, 1364 (11th Cir. 2009) (quoting Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000)), cert. denied, 562 U.S. 872 (2010). The record shows that Mr. Bookhammer was an experienced trial counsel. Not only was he experienced, he had a wealth of experience dealing with criminal defendants with competency issues. Also very important to this case, Mr. Bookhammer had extensive experience representing Petitioner over the years. Mr. Bookhammer was fully aware of Petitioner's past mental health issues. Mr. Bookhammer knew Petitioner had been tested for competency within a year prior to the trial, was on a

regime of medication, and was undergoing counseling prior to being arrested.

Counsel was also aware that during preparation for trial, Petitioner was confined in jail, receiving his prescribed medications, and not taking illegal drugs. Importantly, defense counsel, prior to trial and during the trial, did not perceive any signs of incompetency or decomposition, and the record does not reflect any. In fact, defense counsel found Petitioner engaged, rational and fully able to discuss his case.

All that is constitutionally required is reasonably effective counsel, not perfect or error-free counsel. "Strickland does not guarantee perfect representation, only a 'reasonably competent attorney.'" Richter, 562 U.S. at 110 (quoting Strickland, 466 U.S. at 687) (internal quotation omitted). Here, defense counsel's representation did not so undermine the proper functioning of the adversarial process that Petitioner was deprived of a fair trial. As such, Petitioner received effective representation.

It is Petitioner's burden to show that his counsel's representation fell below an objective standard of reasonableness, and Petitioner has failed to meet this burden. Admittedly it is a high bar that is difficult to reach.

In denying this ground of the amended Rule 3.850 motion, the trial court concluded that counsel's performance was not deficient under Strickland, and denied post conviction relief. Ex. G. The 5th DCA affirmed. Ex. L. Deference under AEDPA should be given to

the last adjudication on the merits provided by the 5th DCA. Accordingly, deference will be given as its decision is not inconsistent with Supreme Court precedent, including <u>Stickland</u> and its progeny.  The state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts.  Ground two is due to be denied.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.    The **Clerk of the Court** shall enter judgment accordingly and close this case.

3.    If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability.**[4]  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions

---

[4] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).  Upon due consideration, this Court will deny a certificate of appealability.

report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 20th day of February, 2018.

_____
BRIAN J. DAVIS
United States District Judge

sa 2/9
c:
Algie Scott
Counsel of Record